UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/19/2026

UNITED STATES OF AMERICA,

                Plaintiff,

    -against-

BRALLAN PEREZ ALARCON,

                Defendant.

No. 25-CR-461 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Defendant Brallan Perez Alarcon ("Defendant") is charged with threatening to assault and murder federal law enforcement officers, specifically agents of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), with the intent to impede, intimidate, interfere with, or retaliate against such officers on account of the performance of their official duties, in violation of 18 U.S.C. § 115(a)(1)(B).  Trial is scheduled to begin on June 1, 2026.

Before the Court are the parties' motions *in limine*.  The Government moves to: (1) preclude Defendant from offering evidence or argument concerning immigration policy and enforcement, including arguments aimed at jury nullification; (2) preclude evidence or argument concerning Defendant's personal background, health, family circumstances, and potential punishment or collateral consequences of conviction, including immigration consequences; and (3) limit certain cross-examination of a Government witness identified as "Dispatcher-1" concerning prior allegations of misconduct, internal investigations, and ongoing family court proceedings.  (ECF No. 20, "Gov't. Mem.")  Defendant opposes the Government's motion.  (ECF No. 29, "Def. Opp.")

Defendant, in turn, moves to preclude evidence and argument relating to a Temporary Extreme Risk Protective Order ("TERPO"), including evidence that law enforcement obtained a court order authorizing a search of Defendant and his residence, and prohibiting Defendant from possessing firearms. (ECF No. 21, "Def. Mem.")  The Government opposes Defendant's motion. (ECF No. 28, "Gov't. Opp.")

For the following reasons, the Government's motion is GRANTED, in part, and DENIED, in part, and Defendant's motion is likewise GRANTED, in part, and DENIED, in part.

## BACKGROUND

The Government alleges that on September 20, 2025, Defendant placed a series of telephone calls to the Ramapo Police Department ("RPD") and the Spring Valley Police Department ("SVPD") in Rockland County, New York. (Gov't. Mem. at 1–2.)  During those calls, Defendant allegedly expressed frustration with ICE operations in and around Spring Valley and repeatedly stated, in substance, that ICE agents would be "shot" or "killed" if they came to his home.  (*Id*.)  Over the course of approximately seventy-five minutes, Defendant allegedly continued contacting local police departments and reiterating threats directed at ICE officers.  (*Id*.)

Law enforcement subsequently traced the calls to a telephone number associated with Defendant and to his residence in or around Airmont, New York.  (*Id*. at 3.)  An RPD officer later contacted Defendant by telephone, during which Defendant allegedly reiterated that he would shoot ICE officers who came to his home.  (*Id*.)  Thereafter, local law enforcement obtained a TERPO from the Rockland County Supreme Court and, on September 22, 2025, searched Defendant and his residence for weapons.  (*Id*.)  Defendant was later arrested in connection with the alleged threats.  (*Id*.)

On October 8, 2025, a grand jury returned an indictment charging Defendant with threatening federal law enforcement officers with intent to impede, intimidate, interfere with, or retaliate against such officers on account of the performance of their official duties in violation of 18 U.S.C. § 115(a)(1)(B).  (ECF No. 6.)  Defendant has pleaded not guilty, and trial is scheduled to begin on June 1, 2026.  (Minute Entry dated Oct. 14, 2025.)

## LEGAL STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*."  *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).  An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted).  "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial."  *United States v. Perez*, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Though the "standard of

3

relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

The Government seeks to preclude Defendant from offering evidence or argument concerning (1) immigration policy and enforcement; (2) Defendant's personal background and potential punishment; and (3) certain alleged or substantiated misconduct involving a law enforcement witness. (Gov't. Mem at 1.) Defendant, in turn, seeks to preclude evidence relating to the TERPO, including evidence that law enforcement obtained a court order authorizing a search of Defendant and his residence, and prohibiting Defendant from possessing firearms.[1] (Def. Mem. at 1.) The Court addresses these motions in turn.

## I.    Government's Motion

### A.  Jury Nullification and Immigration Policy

The Government first argues that Defendant should be precluded from offering evidence or argument concerning immigration policy and enforcement. (Gov't. Mem. at 4–5.) Specifically, the Government contends that, although Defendant's statements concerning ICE operations are relevant to establishing Defendant's alleged intent and motive, Defendant should not be permitted to present evidence or argument aimed at inviting jury nullification or otherwise encouraging the jury to acquit based on disagreement with federal immigration policy or ICE enforcement practices. (*Id*. at 4–6.) The Court, with clarification, agrees.

---

[1] Defendant also seeks to preclude evidence of his prior convictions, family court matters, and prior attempt to obtain a pistol permit. (Def. Mem. at 1.) The Court need not resolve this request, however, because the Government represents that it does not intend to introduce such evidence at trial. (*Id*. at 1 n.1.)

The Second Circuit has "categorically reject[ed] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." *United States v. Moran-Toala*, 726 F.3d 334, 343 (2d Cir. 2013) (quoting *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)); *see also In re United States*, 945 F.3d 616, 626 (2d Cir. 2019) (same); *United States v. Castro*, 411 F. App'x 415, 420 (2d Cir. 2011) (same); *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) (same). District courts within this Circuit have likewise adhered to this standard and have precluded testimony or argument aimed at jury nullification. *See, e.g.*, *United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) ("[T]he Court will not permit [defendant] to advance arguments aimed at jury nullification, and will issue an appropriate instruction to the jurors on this topic."); *United States v. Bowen*, 511 F. Supp. 3d 441, 447 (S.D.N.Y. 2021) ("Defendant is directed not to advance arguments outside of what the law permits and aimed at jury nullification."); *United States v. Fox*, 2025 WL 2076664, at *21 (E.D.N.Y. July 23, 2025) (precluding potential evidence or arguments that are "designed to engender juror sympathy.").

As the Government acknowledges, issues relating to immigration enforcement have "recently dominated the news cycle." (Gov't. Mem. at 5.) While the Court recognizes that immigration enforcement policies and practices remain the subject of significant public debate, the jury's role is not to evaluate the propriety of such policies, but rather to determine whether the Government has proven the charged offense beyond a reasonable doubt. "Statements designed to appeal to the jury's emotions or to inflame the passions or prejudices of the jury are improper." *Fox*, 2025 WL 2076664, at *21 (quoting *United States v. Peterson*, 808 F.2d 969, 977 (2d Cir. 1987)). Indeed, district courts have adhered to this principle in the context of precluding evidence or argument concerning immigration policy and enforcement. *See, e.g.*, *United States v. Trinidad-*

*Nova*, 816 F. Supp. 3d 245, 253 (D.P.R. 2026) (precluding "arguments about immigration policies"); *United States v. Dugan*, 2025 WL 3301760, at \*1 (E.D. Wis. Nov. 25, 2025) (precluding arguments concerning "disagreement with immigration policy and enforcement").

Defendant consequently may not present evidence or argument aimed at inviting jury nullification or encouraging the jury to acquit based on disagreement with federal immigration policy or ICE enforcement practices.[2]  To the extent, however, that evidence concerning ICE activity is relevant to Defendant's alleged motive, intent, or the context in which the statements were made, the Court will resolve specific objections as they arise at trial.[3]

### B.  Personal Background and Collateral Consequences

The Government next seeks to preclude evidence or argument concerning Defendant's personal or family background, health condition, or any other personal circumstance unrelated to the charged conduct, including consequences of being convicted.  (Gov't. Mem. at 6–8.)

### i.  Personal, Family, and Health Background

The Government argues that Defendant should be precluded from introducing evidence or argument concerning his personal, family, and health background.  (Gov't. Mem. at 6–7.) Defendant does not oppose the Government's request, and the Court agrees.

---

[2] The Court likewise precludes Defendant from advancing any argument aimed at undermining the appropriateness of federal prosecution for the offense conduct. *See, e.g.*, *Reese*, 933 F. Supp. 2d at 583 (precluding evidence and argument concerning "the Government's motive and conduct in prosecuting [defendant]"); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case").  Notwithstanding this ruling, Defendant is permitted to "impeach the veracity of any Government witness through cross-examination," and as such, the "proposed exploration of such witnesses' motives and veracity is permissible." *Reese*, 933 F. Supp. 2d at 583.

[3] The Court understands that Defendant may seek to introduce evidence or argument regarding his state of mind in connection with the alleged statements at issue.  (Def. Opp. at 2–3.)  The Court will address such matters as they arise at trial, as they require a careful balancing of the competing evidentiary concerns implicated by such evidence.  In doing so, the Court remains mindful that the exclusion of evidence central to a defendant's state-of-mind defense may constitute reversible error. *See United States v. Roldan*, 167 F.4th 569, 578 (2d Cir. 2026) (reversing where "excluded evidence corroborated the defendant's testimony on the central issue of intent") (citing *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)).

District courts possess "wide discretion concerning the admissibility of background evidence," including evidence concerning a defendant's personal characteristics. *United States v. Rossy*, 2023 WL 8237055, at *1 (S.D.N.Y. Nov. 28, 2023) (quoting *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988)). A defendant's basic background information, such as his educational and employment history, is "routinely admitted," *id.*, but other information, such as family circumstances and health, generally is not. *See, e.g.*, *United States v. Washington*, 2023 WL 6219203, at *10 (S.D.N.Y. Sept. 22, 2023) (precluding evidence of "family background, health, age, or any other similar factors" because "[s]uch evidence is generally irrelevant to any issue of consequence"); *United States v. Raines*, 2023 WL 6211980, at *6 (S.D.N.Y. Sept. 25, 2023) (precluding evidence that the defendant "is a devoted family member" and "has serious health problems" because such information bore "little relevance" to the crimes charged and "may improperly elicit the jury's sympathies"); *United States v. Battaglia*, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (excluding "any evidence of Defendant's family and personal status").

Here, Defendant is charged with threatening federal law enforcement officers in violation of 18 U.S.C. § 115(a)(1)(B). (ECF No. 6.) The charge arises from allegations that Defendant threatened to harm ICE agents because of their immigration enforcement activities. (*Id.*) Evidence concerning Defendant's personal, family, or health background is therefore "irrelevant to any issue of consequence." *See Washington*, 2023 WL 6219203, at *10. As a result, the Court precludes Defendant from introducing evidence or argument concerning his personal, family, or health background to the extent such evidence is unrelated to the charged conduct or otherwise intended to elicit juror sympathy.[4]

---

[4] In the event Defendant raises an intoxication defense, the Government clarifies that it does not seek to preclude evidence concerning Defendant's alcohol use insofar as such evidence is relevant to intent. (Gov't. Mem. at 6 n.2.) The Court's ruling therefore does not pertain to evidence or argument concerning Defendant's alleged intoxication to the extent such evidence is offered to negate intent.

### ii. Punishment and Collateral Consequences

The Government also seeks to prevent Defendant from introducing evidence or argument concerning the punishment or collateral consequences he may face if convicted. (Gov't. Mem. at 7–8.) This includes any potential immigration consequences, including possible removal from the United States. (*Id.*) Defendant does not oppose the Government's request, and the Court agrees.

The Second Circuit has long recognized that, where a jury has no role in sentencing, it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)); *see also United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009) (affirming rejection of argument that an instruction on the sentencing consequences of the jury's verdict was "required as a matter of general federal criminal practice"). For that reason, except in certain limited circumstances, a defendant "has no legal right to introduce evidence or argument regarding sentencing consequences." *United States v. Feuer*, 403 F. App'x 538, 540 (2d Cir. 2010).

This principle holds true in the context of potential immigration consequences. District courts have routinely precluded criminal defendants from introducing evidence or argument with respect to "any potential immigration consequences of a guilty verdict." *See United States v. Adelekan*, 567 F. Supp. 3d 459, 471 (S.D.N.Y. 2021) (precluding "evidence concerning the punishment or immigration consequences of conviction"); *United States v. Htut*, 2023 WL 4399049, at *16 (S.D.N.Y. July 7, 2023) (precluding "evidence unrelated to the question of Defendant's guilt, such as the immigration consequences of a conviction" because it "would be improper"); *United States v. Mencia-Hernandez*, 2025 WL 2355624, at *7 (N.D.N.Y. July 10, 2025) (precluding "reference to the potential immigration consequences of a conviction"). Indeed, a defendant may not proffer "evidence of punishment, including deportation," in "an attempt to

8

choreograph jury nullification." *United States v. Del Rosario*, 2012 WL 2354245, at *2 (S.D.N.Y. June 14, 2012) (cleaned up).

Notwithstanding Defendant's alleged threats towards ICE agents, (ECF No. 6), Defendant's "immigration status[ ] do[es] not bear on the charged crimes," *Adelekan*, 567 F. Supp. 3d at 471. To the contrary, to prove Defendant guilty of threatening to assault and murder federal law enforcement officers, the Government need only prove that Defendant acted with the intent to impede, intimidate, or interfere with such law enforcement officers while engaged in the performance of their official duties, or to retaliate against such law enforcement officers on account of the performance of their official duties. *See* 18 U.S.C. § 115(a)(1)(B). Whether Defendant may face immigration consequences if convicted has no bearing on whether the Government can establish the elements of the charged offense beyond a reasonable doubt. *See Del Rosario*, 2012 WL 2354245, at *2 (recognizing that it is "improper" to proffer "evidence of punishment, including deportation, to focus the jury on something other than whether the elements of the crime charged have been proven beyond a reasonable doubt") (cleaned up). Evidence or argument concerning any punishment or collateral consequences Defendant may face if convicted, including any potential immigration consequences, is similarly "irrelevant . . . where, as here, the jury does not participate in sentencing the defendant." *Raines*, 2023 WL 6211980, at *7 (citing *United States v. Cook*, 776 F. Supp. 755, 757 (S.D.N.Y. 1991)). The Court therefore precludes Defendant from introducing such evidence or argument before the jury.

### C. Cross-Examination of Dispatcher-1

Finally, the Government seeks to preclude certain topics of cross-examination concerning one of its witnesses. (Gov't. Mem. at 8–9.) Specifically, the Government expects to call "Dispatcher-1" at trial, who allegedly spoke with Defendant by telephone on three occasions on

September 20, 2025. (*Id.*) According to the Government, however, Dispatcher-1 was previously the subject of a Civilian Complaint Review Board ("CCRB") and is currently involved in ongoing family court proceedings with a former spouse regarding issues related to custody of their child—matters the Government contends are unrelated to the instant action. (*Id.*) The Government therefore argues that Defendant should be precluded from cross-examining Dispatcher-1 on these topics because they bear no relevance to the charged offense or Dispatcher-1's anticipated testimony. (*Id.*)

### i. Relevant Background

Dispatcher-1 has been employed by the RPD as a dispatcher for approximately four years and was working on September 20, 2025, when she allegedly spoke with Defendant three times on a recorded telephone line. (Gov't. Mem. at 9.)

According to the Government, Dispatcher-1 was previously the subject of an internal investigation arising from a civilian complaint filed by the girlfriend of Dispatcher-1's former spouse (the "Civilian"). (*Id.* at 9–10.) Specifically, in or about 2025, Dispatcher-1 used an RPD system to check the registration information of a "suspicious" vehicle driving by her home. (*Id.* at 9.) The RPD system confirmed that the vehicle's operator was the Civilian. (*Id.*) The Civilian later filed a complaint against Dispatcher-1, alleging that she improperly used her credentials to access the Civilian's criminal history records. (*Id.* at 9–10.) Following an internal investigation, the RPD determined that the allegation concerning access to criminal history records was unfounded, but concluded that Dispatcher-1 improperly accessed vehicle registration information without supervisory authorization. (*Id.* at 10.) As a result, the RPD withheld three days of paid time off from Dispatcher-1. (*Id.*) The Government further represents that the RPD made no finding that Dispatcher-1 was untruthful. (*Id.*)

Dispatcher-1 is also involved in ongoing family court proceedings with her former spouse concerning custody issues. (*Id.*) In March 2026, Dispatcher-1's former spouse accused Dispatcher-1 of striking him during an incident occurring in or about December 2025. (*Id.*) Dispatcher-1 subsequently agreed to the issuance of an order of protection and resolved the matter through an adjournment in contemplation of dismissal ("ACD") without admitting guilt. (*Id.*) The Government further represents that Dispatcher-1 did not testify in connection with those proceedings. (*Id.*)

### ii. Applicable Legal Standard

District courts have "broad discretion in controlling the scope and extent of cross-examination," *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013), and are empowered to impose "reasonable limits" on cross-examination to safeguard against "harassment, prejudice, confusion, and waste," *United States v. White*, 692 F.3d 235, 248 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (quoting *United States v. Cedeño*, 644 F.3d 79, 82 (2d Cir. 2011)). At the same time, district courts must afford a criminal defendant wide latitude in cross-examining government witnesses. *Id.* Along those lines, Fed. R. Evid. 608(b) permits inquiry into specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness." *United States v. Williams*, 2026 WL 203141, at *10 (S.D.N.Y. Jan. 27, 2026). Rule 608(b), however, "is intended to be restrictive . . . [and] does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." *United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (citations and internal quotation marks omitted).

### iii. Cross-Examination Concerning Substantiated Allegations

The Government argues that cross-examination concerning Dispatcher-1's use of her RPD credentials to look up the Civilian's vehicle should be precluded because (1) such conduct does

11

not bear on her character for truthfulness and (2) cross-examination concerning this incident would merely create a confusing and prejudicial sideshow.  (Gov't. Mem. at 14.)  The Court agrees.

In "assessing whether a defendant may cross-examine a police officer regarding a CCRB complaint, 'the [c]ourt must consider two threshold questions: (1) did the incidents that gave rise to the CCRB complaints involve dishonest conduct bearing on [the officer's] character for truthfulness; and (2) even if the underlying conduct did not involve dishonesty, did the CCRB find that [the officer] was not credible?'"  *United States v. Steele*, 216 F. Supp. 3d 317, 325 (S.D.N.Y. 2016) (quoting *Gonzalez v. United States*, 2013 WL 5289793, at *13 (S.D.N.Y. Sept. 19, 2013)). Absent either element, courts routinely preclude cross-examination regarding substantiated allegations of misconduct by law enforcement officers that bear no relation to truthfulness or credibility.  *See, e.g.*, *United States v. Teron*, 478 F. App'x 683, 685 (2d Cir. 2012) (affirming preclusion of cross-examination regarding a substantiated CCRB complaint alleging that a law enforcement witness engaged in an improper search because the conduct had no bearing on the witness's truthfulness); *United States v. Horsford*, 422 F. App'x 29, 30 (2d Cir. 2011) (affirming preclusion of cross-examination regarding CCRB allegations where "the underlying conduct involved no dishonesty"); *United States v. Lights*, 2016 WL 7098633, at *4 (S.D.N.Y. Dec. 5, 2016) (precluding cross-examination regarding a substantiated CCRB complaint that "does not weigh towards [the witness's] propensity for truthfulness").

Here, the Government represents that, although Dispatcher-1 was subject to a CCRB, the RPD internal investigation concluded that Dispatcher-1 did not make any false statements or otherwise act dishonestly.  (Gov't. Mem. at 9–10.)  In any event, even where a CCRB has "found an officer to not be credible," the Second Circuit has clarified that such evidence may still be excluded where the CCRB ruling "provides nothing of value with respect to [the officer's]

12

motivation to lie about the circumstances of [defendant's] arrest in the present case." *Lights*, 2016 WL 7098633, at *4 (quoting *United States v. Lawes*, 292 F.3d 123, 131–32 (2d Cir. 2002)).  This notion holds particularly true here, where the Government anticipates on collaborating Dispatcher-1's anticipated testimony with the telephone recordings between Dispatcher-1 and Defendant. (ECF No. 24.)

Moreover, any connection between Dispatcher-1's conduct and the issue in this case is so attenuated that it "destroys any probative value under Rule 403."  *Williams*, 2026 WL 203141, at *11; *see also United States v. Smith*, 2007 WL 188734, at *1 (S.D.N.Y. Jan. 24, 2007) (precluding cross-examination of law enforcement officer where CCRB claims and investigation were "unrelated to the instant action, and are only tangentially relevant if at all").  The Government likewise represents that Dispatcher-1 is expected to testify about her communications with Defendant, (Gov't. Mem. at 15), matters that are wholly unrelated to the CCRB complaint filed against Dispatcher-1.  The Court therefore precludes cross-examination concerning Dispatcher-1's use of the RPD system to identify the Civilian's vehicle, as well as the resulting CCRB complaint and RPD investigation.

### iv.  Cross-Examination Concerning Unsubstantiated Allegations

The Government similarly moves to preclude cross-examination concerning allegations that Dispatcher-1 (1) struck her former spouse and (2) used her RPD credentials to access Civilian's criminal history.  (Gov't. Mem. at 15–16.)  Specifically, the Government argues that cross-examination on these subjects concern mere allegations with little to no probative value.  (*Id*. at 15.)  In turn, Defendant only challenges the preclusion of cross-examination arising from the consequences of Dispatcher-1 allegedly striking her former spouse.  (Def. Opp. at 3–6.)

District courts generally preclude cross-examination concerning "unsubstantiated allegations" arising from civil proceedings where such questioning provides only "limited probative value." *Henry v. Cnty. of Nassau*, 6 F.4th 324, 334 (2d Cir. 2021); *see also Berkovich v. Hicks*, 922 F.2d 1018, 1022–23 (2d Cir. 1991) (upholding exclusion of unsubstantiated CCRB complaints under Rule 403). In instances where "there has been no finding of any wrongdoing," courts have concluded that "mere allegations are irrelevant to truthfulness and unduly prejudicial . . . [and] are not proper subject matter for cross-examination." *United States v. Donovan*, 577 F. Supp. 3d 107, 122 (E.D.N.Y. 2021); *see also United States v. Akefe*, 568 F. App'x 1, 4 (2d Cir. 2014) (precluding cross-examination concerning an Office of Professional Responsibility investigation because "the allegations against [the law enforcement officer] were wholly unrelated to the instant case and, in any event, found to be unsubstantiated"); *United States v. Fernandez*, 2009 WL 10637246, at *2 (S.D.N.Y. Dec. 30, 2009) (rejecting argument that "allegations themselves might still be sufficient to undermine the witnesses' credibility"). Courts must nevertheless weigh these considerations against the principle that "a criminal defendant [must] be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony." *Nappi v. Yelich*, 793 F.3d 246, 251 (2d Cir. 2015) (quoting *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008)).

Beginning with the allegations stemming from Dispatcher-1's family court proceeding, her former spouse alleged that she struck him sometime in December 2025. (Gov't. Mem. at 10.) The Government represents, however, that the matter was resolved through an ACD and did not result in any finding or admission of wrongdoing. (*Id*.) In response, Defendant argues that he should nevertheless be permitted to cross-examine Dispatcher-1 regarding the pending ACD because it purportedly demonstrates potential bias and motive to testify favorably for the Government. (Def.

Opp. at 4–5.) Specifically, Defendant contends that an ACD does not constitute a dismissal on the merits under New York law and that the underlying charges may still be restored at the prosecutor's discretion. (*Id*.) As a result, Defendant argues that Dispatcher-1 has a personal interest in ensuring that the matter is ultimately dismissed, thereby creating an incentive to curry favor with law enforcement or prosecutors through her testimony in this case. (*Id*.)

The Court agrees with Defendant, but only in part. The existence of Dispatcher-1's pending ACD bears at least some relevance to whether she may possess a motive to testify favorably for the Government. Although arising in the context of state criminal proceedings, New York Appellate Courts have routinely found that prohibiting cross-examination concerning a witness's pending ACD may improperly restrict a defendant's constitutional right to confrontation where the issue bears on credibility or potential bias. *See, e.g.*, *People v. Loftin*, 71 A.D.3d 1576, 1577–78 (4th Dep't 2010); *People v. Wallace*, 60 A.D.3d 1268, 1269 (4th Dep't 2009); *People v. Jones*, 24 A.D.3d 815, 816 (3d Dep't 2005). Defendant argues that Dispatcher-1's pending ACD provides her with a motive to curry favor with law enforcement or prosecutors in hopes that the matter is ultimately dismissed. (Def. Opp. at 4–5.) The Court therefore concludes that Defendant may conduct limited cross-examination concerning the existence of the pending ACD and any expectation of favorable treatment related to the matter.[5]

The Court, however, does not reach the same conclusion concerning allegations that Dispatcher-1 used her RPD credentials to access the Civilian's criminal history record. The Government represents that, following an internal investigation, the RPD determined that Dispatcher-1's access of the Civilian's criminal history records was unfounded. (Gov't. Mem. at

---

[5] However, the underlying allegations concerning the alleged domestic incident, including any details regarding the alleged assault or the related family court proceedings, bear minimal probative value and present a substantial risk of unfair prejudice, jury confusion, and distraction from the issues to be decided at trial. Defendant therefore may not inquire into the underlying facts of the alleged domestic incident or related family court matters.

10.) This conduct appears to consist solely of unsubstantiated allegations of wrongdoing that were either "withdrawn or abandoned" or had "insufficient information to proceed any further." *See Fernandez*, 2009 WL 10637246, at \*2. Such allegations are thus immaterial to the instant action and are not proper subject matter for cross-examination. *See Donovan*, 577 F. Supp. 3d at 122; *Akefe*, 568 F. App'x at 4. In any event, any probative value stemming from these allegations is substantially outweighed by the risk of unfair prejudice, juror confusion, and embarrassment of the witness. *See* Fed. R. Evid. 403; *United States v. Crowley*, 318 F.3d 401, 416 (2d Cir. 2003) (noting district court's broad discretion to assess proposed testimony's probative value regarding truthfulness and balance against prejudicial effect in the context of cross-examination). The Court therefore precludes cross-examination concerning allegations arising from Dispatcher-1's alleged use of her RPD credentials to access the Civilian's criminal history record.

## II.    Defendant's Motion

Defendant seeks to preclude evidence and argument arising from the TERPO, including evidence that law enforcement obtained a court order authorizing a search of Defendant and his residence, and prohibiting Defendant from possessing firearms. (Def. Mem. at 1.) In response, the Government argues that the TERPO evidence is relevant because law enforcement's response to Defendant's alleged threats is probative of whether Defendant's statements constituted "true threats," and further contends that such evidence provides necessary context regarding the sequence of the investigation and law enforcement's response to Defendant's conduct. (Gov't. Opp. at 2–4.) The Court, with clarification, agrees.

As explained above, to establish a violation of 18 U.S.C. § 115(a)(1)(B), the Government must prove that Defendant threatened to assault, kidnap, or murder a federal law enforcement officer with the specific intent to impede, intimidate, or interfere with such an officer while

engaged in the performance of their official duties, or to retaliate against such an officer on account of their official duties. The Second Circuit has recognized that, with respect to § 115(a)(1)(B), "[i]t is not necessary for the government to prove that the defendant intended to carry out the threat, that the defendant had the ability to carry out the threat, or that the defendant communicated the threat to the victims. The relevant intent is the intent to communicate the threat." *United States v. Turner*, 720 F.3d 411, 426 (2d Cir. 2013). District courts have similarly found that "[w]hether a threat is ultimately carried out is, at best, of marginal relevance to whether the threat was made in the first place . . . the speaker need not even have intended or been able to carry out the threat for § 115(a)(1)(B) to apply." *United States v. Hunt*, 534 F. Supp. 3d 233, 252 (E.D.N.Y. 2021) (quoting *Turner*, 720 F.3d at 429); *see also United States v. Segui*, 2019 WL 8587291, at *12 (E.D.N.Y. Dec. 2, 2019) (same).

As Defendant correctly observes, § 115(a)(1)(B) concerns whether Defendant made the alleged threats—not whether Defendant actually possessed a firearm or intended to carry out the threat. (Def. Mem. at 2–3.) This notion is in accordance with Second Circuit precedent. *See Turner*, 720 F.3d at 426. Whether Defendant was subject to a TERPO or prohibited from possessing firearms bears little relevance to the statutory elements themselves. With that said, however, the Court agrees with the Government that the TERPO evidence is not wholly irrelevant. Evidence concerning the investigative steps taken by law enforcement in response to Defendant's alleged threats bears at least some relevance to whether Defendant's statements were reasonably understood as "true threats," as opposed to protected political hyperbole or rhetorical speech. *See Turner*, 720 F.3d at 420–21. The TERPO evidence also provides limited contextual background concerning the sequence of the investigation and law enforcement's response to Defendant's alleged conduct. (Gov't. Opp. at 2–4.)

Nevertheless, the Court finds that any limited probative value associated with the TERPO is substantially outweighed by the risk of unfair prejudice and juror confusion. Evidence that a court issued a TERPO authorizing a search of Defendant and his home, and prohibiting Defendant from possessing firearms, risks suggesting to the jury that another court previously determined Defendant posed a danger to others or was likely to engage in violent conduct. Such evidence may improperly invite the jury to convict based on generalized concerns regarding Defendant's dangerousness, rather than whether the Government has established the elements of § 115(a)(1)(B) beyond a reasonable doubt. *See Old Chief v. United States*, 519 U.S. 172, 182 (1997) (Rule 403 concerns arise when evidence of "unrelated crimes may lead a juror to think that since the defendant already has a criminal record, an erroneous conviction would not be quite as serious as would otherwise be the case") (citation omitted); *United States v. Serrano*, 192 F. Supp. 3d 407, 412 (S.D.N.Y. 2016) (precluding, pursuant to Rule 403, a statement that defendant robbed someone at gunpoint because it was irrelevant to the charged offense and would have an "inflammatory effect on the jury"); *United States v. Ferguson*, 2007 WL 4240782, at *3 (D. Conn. Nov. 30, 2007) (precluding potentially probative evidence concerning administrative procedures because they "include counts that are completely unrelated to the criminal charges in this case" and thereby risked confusing the issues before the jury).

The Court will therefore permit the Government to introduce limited testimony concerning the investigative steps undertaken by law enforcement in response to Defendant's alleged threats, including that law enforcement obtained judicial authorization to conduct a search of Defendant and his residence. However, the Government may not reference the TERPO by name, introduce the TERPO itself into evidence, or otherwise suggest that any court previously determined that Defendant posed a danger to others or was likely to engage in violent conduct. To minimize any

18

risk of unfair prejudice or juror confusion, the Government shall refer to the TERPO only, if necessary, as a "court-authorized search" or substantially similar neutral terminology. The Court will further provide an appropriate limiting instruction informing the jury that any such evidence may be considered solely for the limited purpose of understanding the investigative steps taken by law enforcement, and not as evidence that Defendant possessed a violent propensity or was likely to commit the charged offense.[6]

## CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, the Government's motion to preclude evidence and argument concerning immigration policy and enforcement; GRANTS the Government's motion to preclude evidence and argument concerning Defendant's personal background, health, family circumstances, and potential punishment or collateral consequences of conviction, including immigration consequences; GRANTS, in part, and DENIES, in part, the Government's motion to limit certain cross-examination of Dispatcher-1 concerning prior allegations of misconduct, internal investigations, and ongoing family court proceedings; and GRANTS, in part, and DENIES, in part, Defendant's motion to preclude evidence and argument arising from the TERPO.

---

[6] The Court is not persuaded, however, that evidence concerning the TERPO constitutes improper propensity evidence under Fed. R. Evid. 404(b). (Def. Mem. at 4.) The Government does not seek to introduce the TERPO evidence to establish Defendant's character or to demonstrate that Defendant acted in conformity with any alleged propensity for violence. (Gov't. Opp. at 5.) The Court similarly rejects Defendant's argument that the TERPO evidence constitutes improper bolstering under Fed. R. Evid. 801(d)(1). (Def. Mem. at 3–4.) The Government does not seek to introduce prior consistent statements of any witness for rehabilitative purposes, nor does it seek to rely on the TERPO as substantive proof that Defendant committed the charged offense. (Gov't. Opp. at 4–5.) To the extent Defendant argues that the TERPO improperly conveys judicial endorsement of the Government's theory of the case, the Court's limitations on the scope and terminology of the evidence, together with an appropriate limiting instruction, sufficiently address those concerns.

The Government may introduce limited testimony concerning the investigative steps undertaken by law enforcement in response to Defendant's alleged threats, including that law enforcement obtained judicial authorization to conduct a search of Defendant and his residence, subject to the limitations set forth above. The Government may not reference the TERPO by name, introduce the TERPO itself into evidence, or otherwise suggest that any court previously determined Defendant posed a danger to others or was likely to engage in violent conduct. The Court will further provide an appropriate limiting instruction concerning such evidence at trial.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 20 and 21.

SO ORDERED.

Dated: May 19, 2026
       White Plains, NY

_____
Nelson S. Román, U.S.D.J.

20